

Opinions of the United
States Court of Appeals
for the Third Circuit

9-25-1996

# In Re: Tran World

Precedential or Non-Precedential:

Docket 95-7322,95-7323,95-7324

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"In Re: Tran World" (1996). *1996 Decisions.* Paper 80.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/80

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

```
                    UNITED STATES COURT OF APPEALS
                       FOR THE THIRD CIRCUIT


                            No. 95-7322
                            No. 95-7324


          IN RE: TRANS WORLD AIRLINES INCORPORATED,

                                         Debtor


              STANLEY BERGER; BEVERLY BERGER,

                                   Appellants

                               v.

             TRANS WORLD AIRLINES, INCORPORATED

                      THOMAS E. ROSS,

                             Trustee



                            No. 95-7323


          IN RE: TRANS WORLD AIRLIINES, INCORPORATED,

                                         Debtor

              LONDON INTERNATIONAL TRAVEL, LTD.;
                LATIN AMERICAN TRAVEL, INC.,

                                   Appellants

                               v

             TRANS WORLD AIRLINES, INCORPORATED

                      THOMAS E. ROSS,

                             Trustee
```

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. Civ. Nos. 94-00641/642/643)


Argued January 31, 1996

Before: GREENBERG, NYGAARD, Circuit Judges, and
LAY, Senior Circuit Judge

(Opinion Filed  September 25, 1996)

Leonard Komen, Esq. (Argued)
Selner, Glaser, Komen, Berger
& Galganski, P.C.
7700 Bonhomme Avenue
Suite 700
Clayton, Missouri 63105

Eric A. Overby, Esq.
Trans World Airlines,
Incorporated
515 North Sixth Street
18th Floor
Saint Louis, Missouri 63101

Attorneys for Debtor, Trans
        World Airlines,
Incorporated

Henry F. Luepke, Esq. (Argued)
The Stolar Partnership
The Lammert Building
911 Washington Avenue
Saint Louis, Missouri 63101

Anne E. Bookout, Esq.
Lassen, Smith, Katzenstein &
        Furlow
1220 Market Building
Post Office Box 410
Wilmington, Delaware 19899

Attorneys for Appellants
        Stanley Berger, Beverly
                Berger, London
International                     Travel and
Latin American                          Travel

OPINION OF THE COURT

NYGAARD, Circuit Judge.

London International Travel, Ltd., Latin American Travel, Inc., and Stanley and Beverly Berger, previously the sole owners of London and Latin, appeal several orders entered in the bankruptcy of the debtor, Trans World Airlines, Inc.

The bankruptcy court denied the following motions: 1) the Motion to Proceed; that is, to recognize their compulsory counterclaim as an informal proof of claim, or alternatively, for leave to file a proof of claim out of time, and for relief from the discharge injunction to prosecute their claims to judgment; and, 2) the motion to bar the claims of TWA against London/Latin and the Bergers. The district court affirmed. We will reverse in part, affirm in part and remand.

I.

On January 31, 1992, TWA filed a voluntary Chapter 11 petition. The bankruptcy court set May 15, 1992 as the claims bar date. The Bergers presented no claim by that date. On August 12, 1993, the bankruptcy court confirmed TWA's Second Amended Plan of Reorganization, effective November 3, 1993.

On April 7, 1993, TWA sued the Bergers, London and Latin in the United States District Court for the Eastern District of Missouri, asserting a federal RICO claim and several state law causes of action. The Bergers filed a compulsory counterclaim in response on April 22, alleging defamation. TWA filed its answer on May 12.

In March 1994, the district court dismissed TWA's RICO claim with prejudice and declined to exercise supplemental jurisdiction over the parties' state law claims. The parties then refiled their respective state law claims in Missouri state court.

The Bergers allege that TWA made defamatory statements about them between October 1990 and December 1992. For its part, TWA asserted claims of fraud, money had and received, and breach of contract. TWA filed a motion in state court to dismiss the Bergers' defamation claim, on the ground that the bankruptcy court had discharged TWA from all debts, except as otherwise provided in the Confirmation Order, that the Confirmation Order did not except the Bergers' claim from discharge, and that the Bergers were enjoined by 11 U.S.C. § 524(a)(2) from commencing or continuing their suit. Subsequently, the Bergers and London/Latin moved the bankruptcy court for leave to proceed to judgment on their claims and to bar TWA's. The bankruptcy court denied these motions, and the district court affirmed. In re Trans World Airlines, Inc., 182 B.R. 102 (D. Del. 1995). This appeal followed. We have appellate jurisdiction under 28 U.S.C. § 158(d).

II.

The Bergers argue that the bankruptcy court should have granted their motion to proceed to judgment in state court because TWA failed to notify them of the confirmation hearing date. They assert that TWA had notice of their status as potential creditors in TWA's bankruptcy once the Bergers asserted

their compulsory counterclaim two months before the June 1993 notice of the confirmation hearing.  The Bergers argue that, because 11 U.S.C. § 1128 requires notice of the confirmation hearing to all parties in interest, and because they did not receive formal notice, enforcing the discharge as to their claims would violate the Fifth Amendment Due Process Clause.

## A.

The Berger's state court complaint alleges four instances of defamation: October 22, 1990; January 30 and August 6, 1991; and sometime in December 1992.  The complaint recites that the Bergers had entered into a profitable contract to sell their agencies to another concern, Meritek, but that Meritek, upon hearing the alleged defamation, refused to tender the remaining payments due under the contract and dismissed the Bergers from their employment.  Meritek also sued the Bergers for fraud, which the Bergers allege they settled on unfavorable terms.

Three of the above four instances of alleged defamation occurred before TWA filed its bankruptcy petition on January 31, 1992.  As such, they are prepetition claims that were required, absent excusable neglect, to be asserted before the bar date of May 15, 1992.  The Bergers failed to assert their claims by that date.  They nevertheless argue that the bar date should not be enforced as to them because they received inadequate notice of the proceedings.  We reject that argument.

The Bergers admit that TWA did not know of their defamation claim until they filed their compulsory counterclaim on April 22, 1993.  This admission is fatal.  When TWA gave notice of the claims bar date, the Bergers were unknown creditors entitled solely to publication notice.  Chemetron Corp. v. Jones, 72 F.3d 341, 348 (3d Cir. 1995) ("It is well established that, in providing notice to unknown creditors, constructive notice of the bar claims date by publication satisfies the requirements of due process."); see New York v. New York, New Haven & Hartford R.R. Co., 344 U.S. 293, 297, 73 S.Ct. 299, 301 (1953); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657 (1950).  TWA duly published the requisite notices; hence, the Bergers constructively received the notice to which they were constitutionally entitled.  We therefore conclude that TWA's discharge in bankruptcy eradicated the Bergers' claims for any prepetition defamation.

We acknowledge that the bankruptcy court could allow unknown creditors to assert claims after the bar date upon a showing of excusable neglect.  Such creditors would be thereafter entitled to the formal notice accorded other creditors who filed timely claims.  The Bergers, however, neither claimed nor demonstrated excusable neglect.  Accordingly, the bankruptcy court could not allow their participation in the bankruptcy even after they made known their prepetition claims against TWA.  See In re Vertientes, Ltd., 845 F.2d 57, 60 (3d Cir. 1982); accordChemetron, 72 F.3d at 349 ("[B]ecause claimants are unknown creditors and Chemetron's publication notice was sufficient, claimants must show that their failure to file in a timely manner was due to 'excusable neglect;' otherwise, their claims arising pre-petition will be barred."); In re Best Products Co., 140 B.R.

353, 359 (Bankr. S.D.N.Y. 1992). The bar date means just that; it is a "drop-dead date" that bars all prepetition claimants who received the required notice. Because the Bergers failed to assert their prepetition claims by the bar date and failed to show excusable neglect, those claims are legally dead.

The Bergers also argue that, inasmuch as TWA knew about their compulsory counterclaim, the bankruptcy court should have treated the compulsory counterclaim as an informal proof of claim in the TWA bankruptcy proceeding. This argument also fails, at a minimum, because the Bergers never asserted their claims before the bar date, and the bankruptcy court could not allow them to file a belated proof of claim absent a showing of excusable neglect.

B.

This does not end our inquiry, however. The Bergers also allege that TWA defamed them in or about December 1992, some eleven months after the bankruptcy petition was filed and seven months after the bar date. TWA was on notice of this claim as of April 22, 1993, when the Bergers filed their compulsory counterclaim, yet failed to give the Bergers formal notice of the confirmation hearing scheduled for June of that year.

It is well-settled that a known creditor is entitled to formal notice of impending bankruptcy proceedings. Chemetron, 72 F.3d at 346. This is true even where, as here, the creditor has actual knowledge of the pendency of bankruptcy proceedings generally, but is not given formal notice of the confirmation hearing. In re Harbor Tank Storage Co., 385 F.2d 111, 114-15 (3d Cir. 1967). A creditor will be deemed to be "known" to the debtor if the debtor has either actual knowledge of its existence or if its identity "can be identified through reasonably diligent efforts." Chemetron, 72 F.3d at 346 (internal quotation marks omitted).

In Chemetron, we stated that, while "a vast, open investigation[]" is not required, the debtor must undertake a careful examination and diligent search of its own books and records. Id. at 346-47. Here, although the Bergers filed their defamation action as a counterclaim to TWA's fraud suit rather than proceeding in the bankruptcy court, we are convinced that a diligent search of TWA's records by its bankruptcy counsel would, or at least should, have revealed the Berger claims. Hence, the Bergers were known creditors with respect to the postpetition defamation they alleged.

That conclusion mandates that we reverse the district court's decision to deny the Bergers' motion to proceed. Because they were not given actual notice of the confirmation hearing, their postpetition defamation claims could not have been discharged in bankruptcy. See Dalton Development Project v. Unsecured Creditors Committee (In re Unioil), 948 F.2d 678, 682-84 (10th Cir. 1991); In re Pettibone Corp., 151 B.R. 166, 170-73 (Bankr. N.D. Ill. 1993). We emphasize, however, that on remand, the Bergers must prove that a defamatory statement was published in or around December 1992, and that they proximately suffered injury as a result. If the evidence at trial reveals only prepetition tortious conduct, then the Bergers' claims are

discharged.

## III.

Each appellant further argues that TWA's state court claims against the Bergers, London and Latin were not properly included among TWA's assets in bankruptcy so that action on those claims would be barred by res judicata and estoppel. The Bergers, London and Latin, separately allege that TWA failed to include its claims against them among its schedules of assets filed with the bankruptcy court. They contend that TWA's failure to disclose those claims bars it from asserting them in the present action. The bankruptcy court found that the claims were properly included. The bankruptcy court specifically found that "(i) the debtor did properly include its said claims among the assets in its schedules although not identifying the movants by name, and (ii) the Order confirming the plan does provide for the debtor to retain the right to collect its assets, which would thus include its claims against movants." These findings are not clearly erroneous; hence we must reject appellants' argument.

## IV.

The district and bankruptcy courts also erred in another aspect. Without comment or explanation, the bankruptcy court denied the Bergers' motion to set off under 11 U.S.C. § 553. The district court affirmed the bankruptcy court's denial of setoff. In affirming, the district court noted that the confirmation order discharged TWA from all claims arising before the confirmation date. It then observed that 11 U.S.C. § 524(a) might bar a setoff. The district court, however, did not decide whether setoff was available against a discharged debtor. Instead, assuming arguendo that there could be setoff, the district court considered whether the mutuality requirement of § 553 had been satisfied. Ruling on the mutuality of the claims, the district court stated:

> In their state court petition, the Bergers allege that TWA published "false, defamatory, libelous and slanderous statements, to-wit: that the Bergers dishonestly and fraudulently misappropriated moneys from TWA by shifting market share on non-TWA airlines from London to Latin." This allegation of dishonest and fraudulent misappropriation forms the basis for TWA's count I. If TWA should prevail on count I, the Bergers' defamation claim will be extinguished. The claims, therefore, are not mutual, and any recovery the Bergers might theoretically win for their claim would not be properly characterized a set off.

TWA, 182 B.R. at 109 (citation omitted).

It is true that if TWA prevails on its fraud count, the Bergers cannot prevail on their defamation claim and there will thus be no defamation recovery to set off. If the Bergers prevail on the defamation claim, TWA could not successfully demonstrate fraud. Were these the only two claims at issue, the lack of mutuality would be apparent. For mutuality to exist, both claims must not be mutually exclusive, so that the

creditor's setoff claim can be subtracted from the bankruptcy debtor's claim.

The district court failed to address the possibility that TWA might not prevail on Count I (fraud), but might still prevail on Count II (money had and received) or Count III (breach of contract). In such a circumstance, it would be theoretically possible for the Bergers to prevail on their defamation claim. The Bergers might be found to have been defamed without committing fraud, but might still be found liable on the other legal theories alleged by TWA in Counts II and III. The district court must consider whether the Bergers' defamation claim could be deemed mutual with TWA's Count II claim or Count III claim. We will remand to give the district court the opportunity to decide the issue in the first instance.

V.

For these reasons, and to the extent we have described, we will reverse in part, affirm in part and remand the cause for further proceedings.