**In re EAGLE-PICHER INDUSTRIES, INC., et al., Debtors.**

**Bankruptcy No. 1-91-00100.**

United States Bankruptcy Court, S.D. Ohio, Western Division.

Dec. 24, 1997.

See also 215 B.R. 983.

Stephen Karotkin, New York City, for EPI.

Ernie L. Brooks, Southfield, MI, for Therma–Tru.

John N. MacKay, Toledo, OH, for Therma–Tru.

Douglas S. Tripp, Cincinnati, OH, for EPI.

Lawrence R. Elleman, Cincinnati, OH, for Therma–Tru.

Neal J. Weill, Asst. U.S. Trustee, Cincinnati, OH.

## DECISION ON MOTION OF EAGLE–PICHER INDUSTRIES, INC. RE THERMA–TRU CORP.

BURTON PERLMAN, Bankruptcy Judge.

Reorganized debtor Eagle–Picher Industries, Inc. has filed a Motion for Order Enforcing the Plan and the Confirmation Order to Stay Actions of Therma–Tru Corporation (the "Motion"). (We will hereafter refer to the Reorganized debtor Eagle–Picher Industries, Inc. as "EPI". Its predecessor, the debtor-in-possession during the pendency of the bankruptcy case, we will refer to as "the debtor"). Therma–Tru Corporation, in January, 1997 had filed suit against Pease Industries, Inc. in the U.S. District Court for the Eastern District of Michigan ("Michigan suit") for patent infringement. On May 29, 1997, Therma–Tru moved in that suit to add EPI as a defendant. Therma–Tru is suing Pease for infringement of its patent for fiberglass skins, and seeks to add (and now evidently has added) EPI to the litigation as a defendant as the supplier of the skins. In its papers on this Motion, Therma–Tru indicates that it is proceeding against EPI separately with regard to acts which occurred pre-petition, pre-confirmation date, and post-confirmation date, asserting that the infringing acts of EPI or the debtor extended throughout those periods.

In support of the Motion, EPI appended several exhibits. It attached a copy of the page from bankruptcy Schedule A–3 showing that Therma–Tru was scheduled as a creditor in its bankruptcy. In addition, it attached the affidavit of David E. Troller to which several exhibits were attached, including a proof of claim form filed by Therma–Tru in the bankruptcy case of EPI, and a copy of an amended claim replacing the individual proof of claim form filed by Therma–Tru. EPI included as well a copy of the Order on Confirmation of Plan entered in the bankruptcy case. EPI also attached the affidavit of Robert N. Kent, a vice-president of a division of EPI. Finally, EPI attached as an exhibit a copy of Therma–Tru's Motion for Leave to Amend the Complaint to Join Eagle–Picher Industries, Inc. as Defendant in the Michigan suit.

In opposition to the Motion, Therma–Tru filed with its memorandum an excerpt from the deposition of David Lennox, a representative of the debtor. In addition, Therma–Tru offered the affidavits of David D. Haddix, an officer of Therma–Tru, and also an affidavit of Janie W. McFarlin, an attorney with a law firm representing a group of potentially responsible parties ("PRP") (this is CERCLA terminology) with regard to a Diaz refinery site in Arkansas. Therma–Tru was a member of the PRP committee. Exhibits A and B are attached to the McFarlin affidavit. Exhibit A consists of copies of letters from the debtor addressed to several members of the PRP committee requesting a corrected address. Exhibit B is a copy of a letter received by Ms. McFarlin from David E. Troller of the debtor. With the responsive memorandum filed by EPI, it included a supplemental affidavit of David E. Troller. After submission of the memoranda of the parties, a hearing was held on the Motion.

At the time of that hearing, the court heard arguments on a parallel motion brought by EPI against Caradon Doors and Windows, Inc., which had filed suit against EPI in the U.S. District Court in Georgia. We have now issued a decision and judgment in regard to the Caradon motion. The jurisdictional considerations which we found applicable on that motion apply here as well, and we therefore quote that portion of our Caradon decision:

> We hold that we have jurisdiction to determine whether Caradon has violated the injunction of § 524 and § 1141 of the Bankruptcy Code, the Plan and/or the Confirmation Order, hereafter referred to collectively as "the confirmation injunction." We do not, however, have jurisdiction to consider the merits of Caradon's claims if they are free thereof. If there is no violation of the confirmation injunction, Plan or Confirmation Order, Caradon may pursue its claims in the Georgia suit.

(We will in the present decision use the phrase "the confirmation injunction" with the same content as in the quotation.) Thus, we will not consider the merits of Therma–Tru's claim. If Therma–Tru is not barred by the

confirmation injunction it can pursue the Michigan suit against EPI.

■ The outcome for Therma–Tru, at least in part, must be different from that we reached for Caradon. Therma–Tru's Michigan suit alleges infringing acts by EPI post-confirmation date of debtor's reorganization plan. It is well established that each sale of an infringing item is a separate and distinct act of infringement of a patent. *Curtis Mfg. Co., Inc. v. Plasti–Clip Corp.*, 933 F.Supp. 107, 114 (D.N.H.1995). Consequently, the Motion of EPI must fail with regard to staying Therma–Tru from seeking relief for post-confirmation date acts.

As we indicated earlier, however, Therma–Tru in the Michigan suit also seeks relief on account of alleged pre-petition acts and pre-confirmation acts of the debtor. We therefore must separately consider whether the Michigan suit against EPI, insofar as these acts are concerned, is barred by the confirmation injunction. EPI says that Therma–Tru is precluded from seeking relief by reason of any allegedly infringing acts which occurred pre-petition or pre-confirmation date by reason of the confirmation injunction, and there is no reason why the confirmation injunction should not be applied here with respect to pre-confirmation claims. EPI says that Therma–Tru had formal notice of the pendency of the Chapter 11 cases and the general claims bar date, but failed to file a claim in the bankruptcy case. In addition, EPI says that Therma–Tru was adequately informed of debtor's confirmation hearing by notice by publication. In support of these assertions, it relies upon the Troller affidavits. The Troller affidavits testify that notice of the bankruptcy and claims bar date were sent to Therma–Tru, a scheduled creditor. In addition, the first Troller affidavit includes a proof of claim form filed in debtor's bankruptcy in which Therma–Tru is the claimant. Further, EPI says, and it is not denied, that notice by publication of the hearing on confirmation of the plan was published in the Wall Street Journal and the New York Times.

Therma–Tru vigorously disputes EPI's assertion that Therma–Tru received notice of debtor's bankruptcy. Therma–Tru says that the Haddix affidavit evidences that it never received such notice. It responds to the evidence offered by EPI of a Therma–Tru proof of claim in the bankruptcy, by asserting that it did not file such a proof of claim. In opposition to the Motion, Therma–Tru argues, and offers evidence to support the fact, that it had no knowledge of the allegedly infringing sales to Pease. In its memorandum, it says: "Therma–Tru's claims arising out of the Pease Sales must be distinguished from Therma–Tru's claims against Peachtree Doors, Inc., now known as Caradon Doors and Windows, Inc. ("Caradon")."

In opposing the motion of EPI, Therma–Tru asserts (1) that it cannot be bound by the confirmation injunction because it had no notice of any proceedings on the plan; (2) that it is not bound by the confirmation injunction because it knew nothing of the sales by debtor to Pease; and (3) that it has an administrative expense claim which is provided for in debtor's plan.

■ We have paid close attention to the evidentiary offerings of the respective parties on the present Motion and now reach conclusions based upon that review. This is not a motion for summary judgment governed by F.R.C.P. 56 which would require that where there is a genuine issue of material fact, the motion must be denied. Rather is this a motion seeking enforcement of the injunction which arises following confirmation of a Chapter 11 plan, and we decide it based on the evidentiary record presented by the parties. Even if this were a Rule 56 motion, we would hold that there is no *genuine* issue of fact. Neither party has requested an evidentiary hearing on the issues presented.

1. Lack of Notice.

A. As to Pre-petition Claim.

■ We find as a fact that notice of the bankruptcy and the claims bar date was given by debtor to Therma–Tru. The Troller affidavit establishes that a proof of claim form was sent to Therma–Tru on August 8, 1991, but returned as undeliverable on August 21, 1991. A second mailing was sent to Therma–Tru on September 5, 1991, to 1684 Woodlands Drive, Suite 150, Maumee, Ohio, 43537–4019. Therma–Tru has not denied

that this was a correct address. Establishment of a mailing raises a presumption that the mailing was received. *In re Eagle–Picher Industries, Inc.*, 175 B.R. 943, 945–46 (Bankr.S.D.Ohio 1994). The assertions by Haddix in his affidavit cannot avoid that conclusion. His affidavit is dated June 27, 1997, and it can surprise no one that a search at that time for documents sent in 1991 was unproductive. The Haddix statement that this establishes that such notice was never received cannot be given credence. We hold that actual notice of the bankruptcy and bar date were given by debtor to Therma–Tru.

There is another basis for holding that Therma–Tru had actual notice of the bankruptcy. Attached to the Troller affidavit is a proof of claim form filed on behalf of Therma–Tru by its counsel regarding a certain superfund site. With respect to this evidence, Haddix responds:

> Neither I nor any other person who had the appropriate responsibility within Therma–Tru had any knowledge of the proofs of claim described in the Troller Affidavit that were filed on behalf of the Diaz Refinery PRP Group by the law firm of Chisenhall, Nestrud & Julian, P.A. Therma–Tru retained separate legal counsel to represent it in connection with Diaz Refinery matters. At no time was Chisenhall, Nestrud & Julian, P.A. in any way authorized to act on behalf of Therma–Tru Corporation in its individual capacity for any matter whatsoever.

This somewhat confusing statement by Haddix cannot disprove that a proof of claim form was filed by an agent of Therma–Tru in debtor's bankruptcy case. The proof of claim as submitted includes the following statement: "The undersigned ... Chisenhall, Nestrud & Julian ... Little Rock, Arkansas, 72201 ... is the agent of, and is authorized to make this proof of claim on behalf of the claimant." The named claimant is Therma–Tru Corporation. There is no assertion in Therma–Tru's evidence that this statement is untrue. The knowledge of its agent requires that we impute to Therma–Tru knowledge of debtor's bankruptcy. *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 457 (6th Cir.1982).

By reason of the foregoing findings, we hold that Therma–Tru, having actual notice of debtor's bankruptcy, is barred by the claims bar date by which time it filed no claim, from pursuing any pre-petition claim.

**B. As to Pre-petition and Pre–Confirmation Claims.**

Therma–Tru argues that it cannot be precluded from asserting any pre-confirmation claims because it was not given notice of the confirmation hearing. We find two facts from the record before us which relate to this argument. The first is that no formal written notice was given by the debtor to Therma–Tru of the confirmation hearing. The second is that notice by publication was given by debtor of the confirmation hearing in the Wall Street Journal and the New York Times.

In its briefing, EPI asserts that Therma–Tru was not a "known" creditor at the time of the confirmation of its plan. It is well established that known creditors are entitled to actual written notice, while for unknown creditors notice by publication will generally suffice. *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3rd Cir.1995); *Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383, 1386 (10th Cir.1987), cert. dismissed 488 U.S. 881, 109 S.Ct. 201, 102 L.Ed.2d 171 (1988). In the case before us, there is no dispute that Therma–Tru was not given actual written notice of the confirmation hearing. The question then becomes, on the facts of this case, was Therma–Tru bound by the terms of the confirmation order notwithstanding the absence of such notice. We hold that it was.

We reach this conclusion on two alternative bases which follow from the facts before us. The first basis is that Therma–Tru has abandoned any right it may have had to assert a pre-filing or pre-confirmation claim. True, it was listed as a creditor, and was initially treated as a creditor by the debtor which listed it in its bankruptcy schedules. That is, it was given notice of the bar date for filing pre-petition claims. While a pre-petition claim may have existed (it was scheduled as disputed, contingent, unliquidated), Therma–Tru filed no claim. Nor did it during the bankruptcy file suit for infringe-

ment of its patent against debtor though it knew of debtor's allegedly infringing acts throughout that period. This we hold to be an abandonment of its pre-confirmation claim by Therma–Tru. *In re Chicago, Rock Island and Pacific R.R. Co.,* 788 F.2d 1280, 1283 (7th Cir.1986); *In re Charter Co.,* 125 B.R. 650, 655 (M.D.Fla.1991).

We hold that Therma–Tru is bound by the confirmation injunction on another basis as well. That basis is that Therma–Tru, with respect to any post-petition claim, was an unknown creditor as that term is used in bankruptcy parlance. After all, a "known creditor" is one that a debtor reasonably can expect to assert a claim. Here, as the facts recited above make clear, the debtor was affirmatively led to believe that Therma–Tru did not intend to assert a claim. Apart from its inaction with regard to any pre-petition claim, Therma–Tru failed to file any claim for an administrative expense during the pendency of the bankruptcy, though the pre-confirmation claim it pursues in the Michigan suit existed throughout the bankruptcy. We hold therefore that the pre-confirmation claim now asserted by Therma–Tru was of the character of claims which "although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 317, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950), cited with approval in *Chemetron Corp. v. Jones, supra,* at p. 346.

Therma–Tru in its briefing resists the impact of these decisions, and asserts that the cases it cites, *City of New York v. New York, New Haven and Hartford R.R. Co.,* 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953) and *In re Maya Construction Co.,* 78 F.3d 1395, 1398 (9th Cir.1996), require that it have received actual notice of the confirmation hearing before it can be said that the requirements of due process have been satisfied. Therma–Tru's reliance on these authorities is misplaced. Therma–Tru's cases can be distinguished on their facts. In the *City of New York* case, the lower courts had held that claims could be barred by a bar date by which creditors had been notified only by publication. The Supreme Court

held that actual formal notice to known creditors of the bar date for the filing of claims was required before creditors lost their rights to file claims. In the situation before us, the question dealt by the court in *City of New York* is not present, for here the creditor was given actual formal notice of the bankruptcy and of the claims bar date. Therma–Tru seeks to extend the holding of *City of New York* to its situation, where it was not given actual formal notice of the confirmation hearing. Cases not cited by Therma–Tru, from the Tenth Circuit, also might be taken to support this proposition. *Reliable Electric Co., Inc. v. Olson Construction Co.,* 726 F.2d 620 (10th Cir.1984); *In re Unioil,* 948 F.2d 678 (10th Cir.1991).

In coming to grips with these cases, it is essential to recognize separate events in the life of a Chapter 11 bankruptcy case. An early event is notice of the bankruptcy which is given to scheduled creditors. Such notice is sent either simultaneously with notice of a bar date for filing claims, or the bar date notice may be sent somewhat later though ordinarily early in the case. The last event in a Chapter 11 bankruptcy case is the confirmation hearing, an event which occurs later, after the debtor has been given an opportunity to develop a plan of reorganization. Creditors are then given notice of the confirmation hearing. In *Reliable Electric* and in *Unioil,* the complaining creditors did not receive actual formal notice either of the bar date for filing claims, or of confirmation, though they had actual knowledge of the bankruptcy. Those cases are distinguishable from the case now before us, because here Therma–Tru was given actual formal notice of the bar date, and it took no action; it filed no claim. The distinction to which we have referred above, between the *Reliable Electric* and *Unioil* cases on the one hand, and the case before us on the other, is recognized in *In re Trans World Airlines, Inc.,* 96 F.3d 687, 690 (3rd Cir.1996), for that court distinguished *Reliable Electric* from its decision holding that pre-petition claims would not be recognized though no notice of the confirmation hearing had been given, where *Reliable Electric* did not consider that notice of the bar date and failure to act by that date might bar the claim. *See In re Trans World Air-*

*lines, supra,* at p. 690, footnote 1. Consistent with this reasoning is *In re Christopher,* 28 F.3d 512 (5th Cir.1994), (Fifth Circuit holds that a post-petition creditor, with knowledge of the pendency of a Chapter 11 case is precluded from pursuing a state court action based on post-petition acts of the debtor, though the claimant did not receive actual notice of the confirmation hearing—due process satisfied where the claimant had actual notice of the pendency of the bankruptcy at the time when its claims arose).

### 2. The Pease Sales.

■ In addition to its argument that the confirmation injunction should not apply as to pre-confirmation claims in the Michigan suit on account of lack of notice of the bankruptcy, the bar date and the confirmation hearing, Therma–Tru advances another argument. Therma–Tru says that it was unaware of sales by debtor to Pease until after debtor's plan of reorganization was confirmed, and therefore the confirmation injunction should not bar the Michigan suit. This is a due process argument, that Therma–Tru's Michigan suit should not be subject to the confirmation injunction because Therma–Tru did not know of the sales to Pease by the debtor prior to confirmation. We will for purposes of the present motion accept the factual position advanced by Therma–Tru, that it had no knowledge of the Pease sales prior to confirmation. In view of the attendant facts, however, this argument cannot shield Therma–Tru from the confirmation injunction which bars pre-petition and pre-confirmation claims.

The debtor was a supplier of fiberglass skins since at least as early as 1989, and this was known to Therma–Tru. Indeed, in its motion to add EPI as a party in the Michigan suit, Therma–Tru stated:

> Having been served in the Peachtree suit, there is no doubt that Eagle–Picher had notice in 1989, that Therma–Tru accused it of infringing the same patent asserted against Pease in this case.

That Therma–Tru had no knowledge of debtor's Pease sales was because Therma–Tru deliberately shut its eyes as to allegedly infringing acts by the debtor other than sales to Caradon. Therma–Tru could have filed a claim in debtor's bankruptcy case, because it in fact had a pre-filing claim against the debtor and was notified of the bankruptcy and of the bar date. Had it done so, it could have pursued discovery in the bankruptcy court with regard to all allegedly infringing acts by the debtor.

Further, debtor was originally a named defendant in the Peachtree (Caradon) suit, but was dismissed for lack of venue. After the debtor was dismissed from the Caradon litigation, Therma–Tru could have filed suit against it in a proper venue. In a deposition which Therma–Tru has placed in the record here, Therma–Tru calls attention to the testimony of one of debtor's employees at that deposition. He was asked whether the debtor sold fiberglass skins to anyone other than Caradon, but the witness was instructed by his attorney not to answer the question. While Therma–Tru characterizes this as "concealment" on the part of the debtor as to the identity of other customers, the direction by counsel could have been for any number of procedural reasons. Therma–Tru could have filed a suit against the debtor in the proper venue at that time, and it could have pressed that question in such litigation. It chose not to do that.

Because Therma–Tru's lack of knowledge was the result of its own choice, we hold that it cannot avoid the impact of the confirmation injunction. As in *In re Messics,* 159 B.R. 803 (Bankr.N.D.Ohio, 1993) a creditor cannot escape the effect of a discharge where it is a scheduled creditor but takes no steps to protect itself prior to the bar date. *See also In re Texaco, Inc.,* 182 B.R. 937, 951–53 (Bankr. S.D.N.Y.1995).

We hold that Therma–Tru cannot avoid the confirmation injunction with respect to pre-petition and pre-confirmation allegedly infringing acts by the debtor which are the subject of the Michigan suit. The public policy arguments with regard to the confirmation injunction are well stated in *In re Bowen,* 89 B.R. 800, 804 (Bankr.D.Minn.1988)

> ... the overarching policy of the applicable bankruptcy law favors the according of finality to the debt structure of a reorganized debtor. *See, e.g., In re Emmer Bros.*

*Co.*, 52 B.R. 385, 394 (D.Minn.1985) (noting "the general rule ... that all claims are discharged by confirmation, even if the claim is not discovered until some later date ..."); *In re Ernst*, 45 B.R. 700, 702 (Bankr.D.Minn.1985) (recognizing that a Chapter 11 plan "is essentially a new and binding contract sanctioned by the Court, between a debtor and his pre-confirmation creditors ...").

We hold that EPI is protected by the confirmation injunction from pursuit by Therma–Tru of any pre-petition or pre-confirmation claims in the Michigan suit.

3.  Administrative Claim.

Therma–Tru argues that the pre-confirmation claim it has asserted in the Michigan suit should be regarded as demands for payment as an administrative expense. The pertinent statute, so far as here relevant, is:

**§ 503. Allowance of administrative expenses**

(a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

*    *    *    *    *    *

Therma–Tru relies on case authority which it says supports its contention that its claim qualifies as an administrative expense. *Reading Company v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968); *In re Wall Tube and Metal Products Company*, 831 F.2d 118 (6th Cir.1987); *Carter–Wallace, Inc. v. Davis–Edwards Pharmacal Corp.*, 443 F.2d 867 (2nd Cir.1971); *In re Cambridge Biotech Corp.*, 186 B.R. 9 (Bankr.D.Mass. 1995). In response, EPI contends that there is no room for such an argument because Therma–Tru's claim was asserted post-confirmation, and Therma–Tru is bound by the plan provisions which contemplate that all administrative expense claims will be filed prior to confirmation. There is a threshold question, whether the claim asserted by Therma–Tru in the Michigan suit can be classified as an administrative expense. Because EPI offers no objection to such classification, we will assume arguendo that such claim can be so classified.

We hold that Therma–Tru cannot escape the confirmation injunction even if its Michigan suit pre-confirmation claim is treated as an administrative expense. This is so for reasons which follow from our earlier discussion. Therma–Tru's assertion of such claim cannot be said to be "timely." Therma–Tru's Michigan suit claim existed throughout debtor's bankruptcy case, but Therma–Tru did nothing to pursue it until after confirmation, though it had actual, formal notice of the bankruptcy. Nor has Therma–Tru shown any "cause" as the statute provides which would permit a tardy filing of Therma–Tru's request. The requirement that an administrative expense request be "timely" filed, or tardily filed "if permitted by the court for cause," were added to 11 U.S.C. § 503 by the 1994 amendments to the Bankruptcy Code. We find nothing in the legislative history to assist us in applying the amended language, and there is a paucity of case law on the subject. We do find support for our conclusion in *In re Aspen Limousine Service, Inc.*, 193 B.R. 325, 338 (D.Colo.1996) where the court said:

An administrative claim filed without cause just minutes before a confirmation hearing is set to commence is untimely, particularly where, as here, the lawsuit upon which the claim is based had been filed "months prior."

In the proceeding before us, Therma–Tru did not even assert its claim prior to confirmation, even though the facts giving rise to it were known to Therma–Tru throughout the bankruptcy, and even prior to it.

Additionally, it follows from our earlier discussion that notice by publication of the confirmation hearing sufficed to make Therma–Tru subject to the provisions of the plan, and, as contended by EPI, the plan provided for the handling of administrative claims. It left no room for the filing of an administrative claim after confirmation.

We hold that any claim by Therma–Tru with respect to pre-filing, or pre-confirmation date, acts by debtor for which relief is sought in the Michigan suit, violates the plan, the

confirmation order, as well as 11 U.S.C. § 524(a) and § 1141(a), (c), and (d)(1)(A).