## In re MARINER POST–ACUTE NETWORK, et al., Debtors.

### Mariner Health Group, Inc., et al., Debtors

Arthur Stratton, Jr., M.D., David Hansen, Paul J. Diaz, Douglas Stone, Plaintiffs/Defendants-in Counterclaim,

v.

### Mariner Health Care, Inc., Defendants/Plaintiffs–in–Counterclaim.

Bankruptcy Nos. 00–00113 (MFW), 00–00215(MFW).

Adversary Nos. 02–5598, 02–5599, 02–5604, 02–5606.

United States Bankruptcy Court, D. Delaware.

Sept. 12, 2005.

Derek C. Abbott, Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Counsel for the Former D & Os.

Russell C. Silberglied, Esquire, Richards, Layton & Finger, P.A., Wilmington, DE, Counsel for Mariner Health Care, Inc.

Richard M. Kirby, Esquire, Jones, Day, Reavis & Pogue, Atlanta, GA, Counsel for Mariner Health Care, Inc.

## MEMORANDUM OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court are the Cross Motions for Summary Judgment filed by Mariner Health Care, Inc. ("MHC") and Arthur Stratton, Jr., M.D., David M. Hansen, Paul J. Diaz, and Douglas Stone ("the Former D & Os"). For the reasons set forth below, the Court will deny MHC's Motion and grant the Former D & Os' Motion.

## I. BACKGROUND

On April 13, 1998, the parent of MHC, Paragon Health Network, Inc. ("Paragon"), entered into an agreement ("the Merger Agreement") with Mariner Health Care Group, Inc. ("MHG"), by which MHC was merged into MHG. This transaction was completed on July 31, 1998. The Merger Agreement included certain clauses by which the surviving corporation, MHG, agreed to indemnify the Former D & Os for actions taken in connection with the merger. Paragon subsequently changed its name to Mariner Post–Acute Network, Inc. ("MPAN").

On January 18, 2000, MPAN and certain of its affiliates filed voluntary petitions for relief under chapter 11. On that same

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

date, MHG and several of its affiliates filed voluntary petitions under chapter 11. The MPAN and MHG cases have been jointly administered with their respective affiliates' cases, but not with each others'. On April 3, 2002, this Court entered an order confirming the Joint Plan of Reorganization filed by MPAN and MHG and their respective affiliates.

On August 29, 2002, MHC filed a complaint in state court in Georgia ("the Georgia Action") against PriceWaterhouseCoopers ("PwC") and the Former D & Os alleging that the financial condition of MHG had been misstated at the time of the Merger Agreement and that it was fraudulently induced to enter that agreement by the actions of the Former D & Os.

On September 3, 2002, the Former D & Os commenced an action in the Delaware Court of Chancery to enforce a forum selection clause and the indemnification obligations arising under the Merger Agreement and pre-petition corporate governance documents. MHC removed that case to this Court on September 17, 2002, which was assigned adversary numbers 02–5604 and 02–5606 ("the Delaware Action").[2] On the same day, MHC commenced separate actions (adversary numbers 02–5598 and 02–5599) requesting a declaratory judgment that the Delaware Action was a violation of the discharge injunction ("the Enforcement Action"). MHC subsequently filed answers and counterclaims in the Delaware Action.

The Former D & Os filed a motion to remand and MHC filed a motion to dismiss the Delaware Action. On December 16, 2003, after oral argument and briefing, this Court issued a written opinion granting the motion to dismiss the Delaware Action. *Stratton v. Mariner Health Care, Inc. (In re Mariner Post–Acute Network, Inc.)*, 303 B.R. 42, 47 (Bankr.D.Del.2003) ("the December Decision"). As a result, on March 10, 2004, the parties executed a Consent Judgment to dismiss all counts of the Former D & Os' complaint in the Delaware Action. That judgment was entered on April 22, 2004.

Thereafter, on May 7, 2004, MHC filed a Consolidated Motion for Summary Judgment on its complaint in the Enforcement Action and on its counterclaims in the Delaware Action. On June 14, 2004, the Former D & Os filed their Cross Motion for Summary Judgment. Various replies and supplemental replies have been filed by the parties, in part to advise the Court of developments in the Georgia Action. In response to a query from this Court, MHC filed a Supplemental Notice of Completion of Briefing on April 28, 2005, certifying that briefing was complete. This matter is ripe for decision.

## II. *JURISDICTION*

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(O).

## III. *DISCUSSION*

### A. *Standard of Review*

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is the moving party who must establish that these circumstances

---

**2.** Because the MPAN and MHG cases were not jointly administered, MHC filed two motions to remove the Delaware Action, one to the MPAN case and one to the MHG case.

Similarly, MHC filed two identical Enforcement Actions, one in the MPAN case and one in the MHG case. For ease, the Court refers to them in the singular.

are present. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. All inferences are to be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, to defeat a motion for summary judgment, the non-moving party must come forward with evidence that there is a genuine issue of material fact. *Id.* at 249, 106 S.Ct. 2505. "A genuine issue of material fact exists when reasonable minds could disagree on the result." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

MHC seeks summary judgment on the four counts in its complaint in the Enforcement Action and the counterclaim in the Delaware Action as follows: 1) a declaration that the claims of the Former D & Os in the Delaware Action were discharged; 2) a declaration that the Delaware Action violated the discharge injunction; 3) an injunction to prevent the Former D & Os from continuing to prosecute the Delaware Action; and 4) imposition of sanctions against the Former D & Os in the form of monetary damages for their willful violation of the discharge injunction.

### B. *Declaratory Judgment*

■ MHC argues that the December Decision supports the declaratory relief it seeks. In that Decision, the Court determined that the claims asserted by the Former D & Os in the Delaware Action were discharged and that, therefore, the Delaware Action commenced by the Former D & Os was in violation of the discharge injunction. 303 B.R. at 47. MHC argues that summary judgment is appropriate because the December Decision established the factual and legal predicates to MHC's claims and that, under the doctrine of res judicata, they are entitled to a declaratory judgment to that effect.

The Former D & Os also move for summary judgment. They assert that with respect to the declaratory relief sought there is no longer a live controversy to be decided. They argue that under Federal Rule of Civil Procedure 57, in order for a court to enter a declaratory judgment, an actual controversy must exist.

The Court agrees with the Former D & Os. It has already decided the issues at hand and there is no reason to rule on them again. *See, e.g., Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n,* 288 F.3d 519, 525 (3d Cir.2002) (collateral estoppel prohibits relitigation of issue). Consequently, there is not an actual controversy which would support the declaratory relief sought by MHC. *See, e.g., Gambino v. Rubenfeld,* 179 F.Supp.2d 62, 68 (E.D.N.Y.2002) (holding that no actual controversy of sufficient immediacy and reality existed because the issue had already been decided in a prior case). Therefore, the Court will deny MHC's request for a further declaratory judgment.

### C. *Injunction*

■ MHC similarly argues that the December Decision found all the necessary factual and legal predicates to its claim for an injunction of the prosecution of any claims that were discharged by the Confirmation Order and section 1141. The Former D & Os also assert that there is no longer any live controversy on this point and that, therefore, an injunction is not necessary.

The Court agrees. The December Decision concluded that the Confirmation Order and section 1141 enjoined the prosecution of the Delaware Action. 303 B.R. at 46. The Delaware Action was subsequently dismissed, however, and, therefore, there is nothing to be enjoined.

MHC acknowledges that the dismissal of the Delaware Action moots its request to enjoin the prosecution of that action. It argues, however, that the fact that the Former D & Os willfully violated the Confirmation Order and discharge injunction mandates that the Court grant the injunctive relief sought.

The Court disagrees with MHC. There is already in place an injunction of the prosecution of any claims that have been discharged: the Confirmation Order. No further Order is necessary. *See, e.g., Nutrasweet Co. v. Vit–Mar Enters.,* 176 F.3d 151, 153 (3d Cir.1999) (finding injunction an "unnecessary remedy" where writ of replevin already protected plaintiff's interest in preventing distribution of subject goods).

Further, the Delaware Action has been dismissed and there is not currently any action by the Former D & Os which is in violation of the Confirmation Order or discharge injunction. Thus, there is no threat of irreparable harm to MHC against which an injunction might protect. *See, e.g., Anderson v. Davila,* 125 F.3d 148, 163 (3d Cir.1997) ("An injunction is appropriate only where there exists a threat of irreparable harm such that legal remedies are rendered inadequate."). Therefore, the Court concludes that no further order is necessary or appropriate.

D. *Sanctions*

MHC seeks sanctions, in the form of damages, for the willful violation of the discharge injunction committed by the Former D & Os. MHC argues that it is entitled to this relief under general principles of civil contempt and the express terms of the Plan and Confirmation Order.

1. *Civil Contempt*

█ MHC argues that the Court may impose civil contempt sanctions where: (1) there is a valid order of the court; (2) the person charged with contempt had actual knowledge of the order; and (3) the person disobeyed the order. *See, e.g., In re Continental Airlines, Inc.,* 236 B.R. 318, 331 (Bankr.D.Del.1999). MHC argues that the Court has already made the requisite findings of a willful violation of the discharge order in the December Decision: The Court found that the claims of the Former D & Os were pre-petition ones that had been discharged by the Plan and Confirmation Order. 303 B.R. at 45. In doing so, the Court found that the Former D & Os had actual notice of the commencement of the bankruptcy case and were bound by the Confirmation Order. *Id.* at 47. As a result, the Court held the Former D & Os were precluded from pursuing the Delaware Action. *Id.*

Thus, MHC argues that the Court has already concluded that the Confirmation Order was a valid order of the Court; the Former D & Os had knowledge of this Order; and they willfully violated this order by filing the Delaware Action. As a result, MHC asserts that it is entitled to an award of damages. *See, e.g., In re Fluke,* 305 B.R. 635, 644 (Bankr.D.Del. 2004) (upon finding a party in civil contempt, the court may issue a panoply of sanctions including costs, attorneys' fees and actual and punitive damages); *Continental Airlines,* 236 B.R. at 331 (awarding attorneys' fees and costs where party knowingly initiated litigation in violation of valid confirmation order).

a. *Willfulness*

█ The Former D & Os disagree. The Former D & Os argue that an award of damages as a sanction for their conduct is not warranted here because they did not act willfully or in bad faith. *Langton v. Johnston,* 928 F.2d 1206, 1220 (1st Cir. 1991) ("substantial compliance" with a

court decree by diligent, good faith efforts, can avert a finding of contempt). The Former D & Os contend that the burden of establishing willfulness or bad faith by clear and convincing evidence rests on MHC, which has failed to meet that burden. *Id.* at 1220 ("a complainant must prove civil contempt by clear and convincing evidence").

MHC disagrees and argues (by analogy to section 362(h)) that willfulness requires only that the offending party intend its actions, not bad faith. *See, e.g., Lansdale Family Rests., Inc. v. Weis Food Serv. (In re Lansdale Family Rests., Inc.),* 977 F.2d 826, 829 (3d Cir.1992) (holding that "creditor's 'good faith' belief that he is not violating the automatic stay provision is not determinative of willfulness under § 362(h)"); *Cuffee v. Atlantic Bus. & Cmty. Dev. Corp. (In re Atlantic Bus. & Cmty. Dev. Corp.),* 901 F.2d 325, 329 (3d Cir.1990) (finding that actions of landlord in padlocking debtor's premises after notice of bankruptcy filing and in face of court order restraining such actions were taken in bad faith and were willful violations of the automatic stay).

The Former D & Os argue that the analogy to section 362(h) is not persuasive because that section gives debtors a private cause of action for violations of the automatic stay and has not been extended to violations of the discharge injunction. *See, e.g., Joubert v. ABN AMRO Mortgage Group, Inc. (In re Joubert),* 411 F.3d 452, 456 (3d Cir.2005) (finding that section 524, by itself or coupled with section 105(a), does not imply a private right of action for damages for violation of the discharge injunction); *Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417, 422–23 (6th Cir.2000) (holding that section 524 implies no private right of action as expressly provided in section 362(h)); *Hardy v. United States (In re Hardy),* 97 F.3d 1384, 1389 (11th Cir.1996) (holding that section 524 provides no authority to the bankruptcy court to award monetary damages, instead a court must look to section 105(a) and its contempt powers).

The Former D & Os assert that the correct standard has been set by those courts which have denied contempt sanctions where the party violating the stay had persuasive legal authority for his position and a good faith belief in the validity of his actions. *See, e.g., Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.),* 973 F.2d 1065, 1088 (3d Cir.1992) (holding violation of stay was not willful where it was based on persuasive legal authority and exercised in good faith); *Mother African Union Methodist Church v. Conference of AUFCMP Church (In re Conference of African Union First Colored Methodist Protestant Church),* 184 B.R. 207, 217 (Bankr.D.Del.1995) (denying contempt sanctions where actions were taken based on persuasive legal authority); *Healy/Mellon–Stuart Co. v. Coastal Group, Inc. (In re Coastal Group, Inc.),* 100 B.R. 177, 179 (Bankr.D.Del.1989) (holding that a "scintilla of suggestion" in case law that supports a position removes the action from being classified as a willful violation).

The Former D & Os argue that, in this case, they did not violate the discharge injunction because the Delaware Action was brought only to enforce the forum selection clause not to enforce or collect on a pre-petition debt. The Former D & Os assert that they added the additional counts for indemnification (which they had asserted as counterclaims in the Georgia Action) only for fear that they would be waived if not included. *See, e.g., In re Briarwood Hills Assocs., L.P.,* 237 B.R. 479, 480–81 (Bankr.W.D.Mo.1999) (finding that prosecution of counterclaims did not violate the automatic stay).

■ Further, the Former D & Os argue that there was a valid legal ground to assert that their claims were not discharged because they had not received the appropriate notices in the bankruptcy cases. *See, e.g., Berger v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 96 F.3d 687, 690 (3d Cir.1996) (holding that the discharge injunction only bars claims by a creditor who received formal notice of the plan and confirmation). Where there is a split of authority, no finding of contempt is warranted. *See, e.g., In re Varrone*, 269 B.R. 475 (Bankr. D.Conn.2001) (declining to assess contempt sanctions in light of apparent split in authority over whether debt was discharged); *Schultz v. Hancock Bank (In re Schultz)*, 153 B.R. 170 (Bankr.S.D.Miss.1993) (holding that contempt sanctions were not appropriate for violation of stay where law was uncertain on claim at issue).

MHC disagrees. MHC asserts that the Former D & Os' willfulness is demonstrated by their continued prosecution of the Delaware Action even after MHC asserted it violated the discharge injunction. It argues that the December Decision establishes the invalidity of the Former D & Os' legal claims to notice. MHC also argues that, under the authority cited by the Former D & Os, their claims were meritless. *Berger*, 96 F.3d at 690 (holding that, when a creditor fails to respond to a bar date notice, its claim is rendered "legally dead").

To determine if there was a willful violation of the discharge injunction, the Court must determine if there was any legitimate basis for the Former D & Os to file their Delaware Action. As to the notice question, the Court finds that there was persuasive legal authority that, without formal notice of the plan, the Former D & Os were not limited by the discharge injunction. For this proposition, the Former D

& Os rely on *Berger*. 96 F.3d at 690. Such reliance is not misplaced. The *Berger* Court stated, in relevant part:

> It is well settled that a known creditor is entitled to formal notice of impending bankruptcy proceedings. This is true where, as here, the creditor has actual knowledge of the pendency of the bankruptcy proceedings generally, but is not given formal notice of the confirmation hearing.

*Id.* (citing *Chemetron Corp. v. Jones*, 72 F.3d 341 (3d Cir.1995)). Though the argument of the Former D & Os was rejected by the Court in the December Decision, it was not frivolous or asserted in bad faith.

Furthermore, the Court concludes that the belief of the Former D & Os that they were required to include the indemnification counts in the Delaware Action or lose those claims was not without legal basis. *See, e.g., Cornerstone Techs., LLC v. Conrad*, 2003 Del. Ch. LEXIS 46 at *10 (Del. Ch. Apr. 22, 2003) (asserting that Delaware law frowns on splitting claims between two fora). This was persuasive legal authority upon which the Former D & Os could assert their claims.

Thus, the Court concludes that MHC cannot meet the willfulness element required for civil contempt. Consequently, the Court will deny summary judgment to MHC and grant summary judgment to the Former D & Os on this claim.

b. *Discretion*

■ Even if their action were found to be contemptuous, the Former D & Os argue that an award of damages for contempt is discretionary. *See, e.g., Robin Woods, Inc. v. Woods*, 28 F.3d 396, 401 (3d Cir.1994) (noting that sanctions for civil contempt are committed to the sound discretion of the trial court); *Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 620 (9th Cir.1993); *Wagner v. Ivory*

(*In re Wagner*), 74 B.R. 898, 903 (Bankr. E.D.Pa.1987). A finding of contempt, therefore, does not automatically give rise to liability for damages. *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 984 n. 13 (1st Cir.1995); *Johnston Envtl.*, 991 F.2d at 620. The Former D & Os argue, specifically, that punitive damages are not available for a violation of the discharge injunction. *See, e.g., Hardy*, 97 F.3d at 1390 ("The court may only impose sanctions for contempt that are coercive and not punitive."); *Frankford Trust Co. v. Allanoff*, 29 B.R. 407, 411–12 (E.D.Pa. 1983) (finding that punitive sanctions in connection with contempt judgment were inherently criminal rather than civil and thus beyond the jurisdiction of the bankruptcy court); *In re Andrus*, 184 B.R. 311, 316 (Bankr.N.D.Ill.1995) (finding that remedial and compensatory sanctions, but not punitive damages, were appropriate for violation of discharge injunction).

The Former D & Os argue that, under the facts of this case, an award of sanctions is not warranted. They assert they acted only defensively (after MHC had filed the Georgia Action) and on a sound legal basis to protect their right to have the dispute heard in Delaware. Further, the Former D & Os argue that an award of sanctions for civil contempt would serve no remedial purpose in this case. *See, e.g., In re Torres*, 117 B.R. 379, 382 (Bankr. N.D.Ill.1990) (holding that civil contempt serves a remedial rather than a punitive function; it is a means by which the court can enforce its orders). The Former D & Os note that they have already dismissed the Delaware Action and are no longer in violation of any Order of this Court. Thus, there is no longer anything to remedy.

MHC argues, however, that sanctions are warranted in this case because the Former D & Os continued to prosecute the Delaware Action (including engaging in discovery) after they were aware that it violated the discharge injunction. The Former D & Os counter that they dismissed the Delaware Action promptly after the December Decision and that they only engaged in discovery on the issue of the dischargeability of their claims.

The Court agrees with the Former D & Os that, even if they are in contempt, sanctions are not warranted in this case. The Delaware Action has been dismissed and the Former D & Os are not currently in contempt of any Order of this Court. Therefore, the Court finds no reason to sanction them further.

### 2. *Plan and Confirmation Order*

■ MHC asserts, nonetheless, that it is entitled to its actual damages for the Former D & Os' willful violation of the discharge injunction under the express terms of the Plan of Reorganization and the Confirmation Order. The latter states at paragraph 32 that "any person or entity injured by a willful violation of such injunction shall recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages from the willful behavior." (*See also* Plan at § IX.D.)

The Former D & Os assert that merely inserting such a provision in a Plan or Confirmation Order does not provide a basis for such relief. Since there is no provision of the Bankruptcy Code which would provide such a remedy, it cannot be created simply by insertion in a Plan. *See, e.g., Joubert*, 411 F.3d at 456 (finding no private right of action for damages for violation of discharge injunction); *Pertuso*, 233 F.3d at 422–23 (same); *Hardy*, 97 F.3d at 1389 (same).

MHC asserts that the basis for the inclusion in the Plan and Confirmation Order is the Court's inherent powers under section 105(a). The Former D & Os con-

tend, however, that section 105(a) has a limited scope and cannot create substantive rights that are otherwise unavailable under the Code.

Finally, the Former D & Os assert that MHC has not shown any injury. The Former D & Os argue that the Confirmation Order only provides for recovery of damages if there is an actual injury. *See, e.g., A & J Auto Sales, Inc. v. United States (In re A & J Auto Sales, Inc.),* 223 B.R. 839, 845 (D.N.H.1998) (affirming bankruptcy court's decision that damages were inappropriate where stay violation was in good faith and debtor failed to prove damages resulting therefrom); *New MMI Corp. v. Robec, Inc. (In re Micro Mktg. Int'l, Inc.),* 150 B.R. 573, 575 (Bankr. M.D.Pa.1992) (declining to award damages for willful violation of stay where debtor failed to establish any actual damages other than attorneys' fees); *Whitt v. Phila. Hous. Auth. (In re Whitt),* 79 B.R. 611, 616 (Bankr.E.D.Pa.1987) (stating that attorneys' fees are only allowable to "embellish actual damages" resulting from stay violation).

■ As the Court concluded above, the Former D & Os committed no willful violation of the stay which would warrant the imposition of sanctions. The Plan and Confirmation Order cannot provide authority for an award of actual or punitive damages for civil contempt, if they are not otherwise permitted by law. Section 105(a) cannot create substantive rights that do not otherwise exist under the Bankruptcy Code or other applicable law. *Gillman v. Continental Airlines (In re Continental Airlines),* 203 F.3d 203, 211 (3d Cir.2000); *In re Morristown & Erie R.R. Co.,* 885 F.2d 98, 100 (3d Cir.1989). Since this Court does not have authority to impose punitive damages, the Plan and Confirmation Order cannot vest it with such. *See, e.g., Hardy,* 97 F.3d at 1390;

*Allanoff,* 29 B.R. at 411; *Andrus,* 184 B.R. at 316.

Further, given that the Former D & Os had a good faith basis for their actions, the Court is not inclined to change the American Rule and award attorneys' fees and other costs to MHC. No other damages having been asserted, the Court concludes that no award for sanctions is appropriate under the circumstances of this case.

### IV.  CONCLUSION

For the reasons stated above, the Court will deny the Motion for Summary Judgment filed by MHC and grant the Motion for Summary Judgment filed by the Former D & Os.

An appropriate order is attached.

### ORDER

AND NOW this **12th** day of **SEPTEMBER, 2005,** upon consideration of the Cross Motions for Summary Judgment filed by Mariner Health Care, Inc. and Arthur Stratton, Jr., M.D., David M. Hansen, Paul J. Diaz, and Douglas Stone, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the Motion for Summary Judgment filed by Mariner Health Care, Inc., is **DENIED;** and it is further

**ORDERED** that the Motion for Summary Judgment filed by Arthur Stratton, Jr., M.D., David M. Hansen, Paul J. Diaz, and Douglas Stone is **GRANTED;** and it is further

**ORDERED** that the above adversary proceedings shall be **CLOSED.**