**In re CONTINENTAL AIRLINES, INC., et al., Debtors.**

**Bankruptcy Nos. 90–932 (MFW) to 90–984(MFW).**

United States Bankruptcy Court, D. Delaware.

June 28, 1999.

Jon Geier, Paul Hastings Janofsky & Walker, Washington, DC, Counsel for Continental Airlines, Inc.

James L. Patton, Jr., Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, Co-Counsel for Continental Airlines, Inc.

Charles M. Tatelbaum, Cummings & Lockwood, Naples, FL, Counsel for Eastern Pilots, Merger Committee.

James Harker, Herlihy Harker & Kavanaugh, Wilmington, DE, Co-Counsel for Eastern Pilots, Merger Committee.

Myles J. Tralins, Tralins & Associates, Miami, FL, Counsel for LPP Claimants.

Kate Stickles, Prickett Jones Elliott Kristol & Schnee, Wilmington, DE, Co-Counsel for LPP Claimants.

## OPINION[1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court are two Motions, both of which require that we apply the decision of the Court of Appeals for the Third Circuit in this case. *In re Continental Airlines*, 125 F.3d 120 (3d Cir.1997). The first is the Motion of a group of Eastern pilots, the Labor Protective Provision Claimants ("the LPP Claimants"), to expunge the claims of certain other Eastern pilots ("the Other Eastern Pilots")[2] for failure to timely exercise their right to arbitration. The second is the Motion of the Debtor to enforce the Confirmation Order (as affirmed by the Third Circuit) which reduced all the Eastern pilots' claims for specific performance of their collective bargaining agreement to claims for monetary damages discharged by the provisions of the Plan.

We heard argument on the Motions on January 14, 1999. The parties submitted

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

2. Among the Other Eastern Pilots are 310 pilots represented by the Eastern Pilot Merger Committee ("EPMC"). It is unclear, however, whether EPMC represents all claimants who may be affected by the Motion.

post-trial memoranda and an appendix of related documents on February 25, 1999.

## I. JURISDICTION

This Court has jurisdiction over these Motions, which are core proceedings pursuant to 28 U.S.C. § 1334 and § 157(b)(1), (b)(2)(A), (B) and (O).

## II. FACTUAL BACKGROUND[3]

On February 23, 1986, Eastern Airlines ("Eastern") and its pilots' union, the Air Lines Pilot Association ("ALPA"), ratified a collective bargaining agreement. On February 24, 1986, Texas Air Corporation, the parent of Continental Airlines, Inc. ("Continental") acquired Eastern. ALPA asserted that the acquisition was a merger requiring integration of the Eastern and Continental pilots' seniority lists under the Eastern collective bargaining agreement. When Eastern and Continental refused to bargain with ALPA on the issue, ALPA initiated arbitration.

In March 1989, Eastern filed bankruptcy and asserted that the automatic stay precluded ALPA from proceeding with the arbitration. After protracted litigation, the Court of Appeals for the Second Circuit held that the automatic stay did not preclude arbitration. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2d Cir.1990).

ALPA and Eastern thereafter proceeded with arbitration before Richard R. Kasher (Mr. Kasher, and any successor is referred to herein as "the Arbitrator"). ALPA sought prospective integration of the Eastern and Continental pilots' seniority lists and back pay until the integration was completed.

In the meantime, Continental filed bankruptcy in December 1990. ALPA (and individual Eastern Pilots) filed unliquidated proofs of claim in that proceeding. Continental filed objections and sought a declaration that the claims were general unsecured prepetition dischargeable claims compensable by an award of monetary damages. ALPA disagreed and asserted that the pilots were entitled to specific performance of the collective bargaining agreement, namely, seniority integration. In addition, ALPA asserted that only the Arbitrator had jurisdiction to determine whether a merger had occurred as defined by the collective bargaining agreement and the appropriate remedy thereunder.

In February 1993, the Bankruptcy Court sustained Continental's objection to the ALPA claim. In April 1993, the Bankruptcy Court confirmed Continental's Second Amended Joint Plan of Reorganization. In the Confirmation Order, the Bankruptcy Court stated that any claims under the collective bargaining agreement gave rise to a right of payment dischargeable in bankruptcy and that no right to injunctive or other equitable relief was available. The Confirmation Order consequently enjoined the arbitration proceedings.

ALPA and the LPP Claimants appealed the February and April orders. While the appeals were pending, ALPA settled with Continental. The Settlement Agreement was ultimately accepted by approximately two-thirds of the Eastern pilots who had filed claims in the bankruptcy case.

The LPP Claimants, who had not accepted the settlement, continued the appeals. The District Court affirmed the Bankruptcy Court's Orders in all respects except the injunction of the arbitration proceedings. *In re Continental Airlines, Inc.*, No. 93–163 (D.Del. Nov. 29, 1995). Specifically, the District Court held that the claims of the pilots were dischargeable and that the Plan which so provided was confirmable. *Id.*, slip op. at 27–32. The District Court concluded, however, that the Bankruptcy Court's injunction was invalid because the Bankruptcy Court failed to set forth in sufficient detail the reasons for the injunction. *Id.* at 35–37. The District Court did not remand that issue, however, because it held that section 1113 of

---

**3.** The facts set forth are derived largely from the Third Circuit's Opinion.

the Bankruptcy Code precluded issuance of the injunction. *Id.* at 42.

Cross-appeals were filed by the LPP Claimants[4] and Continental. On August 29, 1997, the Third Circuit issued its decision. The Court affirmed the Bankruptcy Court and District Court decisions holding that the Eastern pilots' equitable claims for seniority integration could be converted into money damages. 125 F.3d at 131–35. Consequently, those claims could be treated, and discharged, in the Continental Plan of Reorganization. *Id.* at 135–36. However, the Court also held that the Bankruptcy Court could not enjoin the arbitration proceedings (since the collective bargaining agreement requiring arbitration had not been rejected). *Id.* at 136–38.

## III. *DISCUSSION*

### A. *Law of the Case*

■■■ We start our consideration of the Motions by noting that both require us to interpret the decision of the Third Circuit in this very case. In rendering our decision, we are bound by the doctrine of the law of the case to "implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Casey v. Planned Parenthood of Southeastern Pennsylvania*, 14 F.3d 848, 857 (3d Cir.1994) (quoting *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir.1985)).

Law of the case rules have developed "to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." Charles A. Wright et al., 18 Federal Rules and Practice § 4478 (1981). Of these rules, the most compelling is

4. Subsequently, a splinter group of the LPP Claimants (EPMC) obtained separate counsel and both prosecuted the appeal for the pilots.

5. The LPP Claimants assert that they alone timely invoked arbitration after the Third Circuit decision. They advise that they have had settlement discussions with Continental but

the mandate rule. This fundamental rule binds every court to honor rulings in the case by superior courts. As the Supreme Court has stated, "In its earliest days this Court consistently held that an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403 (1948). The statutory authority for the power of the appellate courts dates from the first Judiciary Act of 1789 and is now found in 28 U.S.C. § 2106.

*Casey*, 14 F.3d at 856 (footnotes omitted).

The mandate rule applies, however, only to those issues that were decided by the appellate court. *Sanford Fork & Tool*, 160 U.S. at 256, 16 S.Ct. at 293. On remand, a trial court is free to "make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not settled by the decision." *Bankers Trust Co.*, 761 F.2d at 950. "[I]t may consider, as a matter of first impression, those issues not expressly or implicitly disposed of by the appellate decision."

*Id.* at 857.

While the issues before us are not on remand from the Third Circuit, they do require that we implement its ruling.

### B. *Motion to Strike Claims*

The Motion of the LPP Claimants seeks an Order disallowing (for purposes of distribution under Continental's Confirmed Plan) the claims of the Other Eastern Pilots for failure to timely invoke their right to arbitration.[5] Continental supports the Motion to Strike.[6]

are unable to settle their claims until the Other Eastern Pilots' claims are determined or disallowed.

6. EPMC initially raised an objection to the standing of the LPP Claimants to press the Motion to Strike, because the Confirmed Plan prohibits any party except Continental from

*1. Jurisdiction*

As an initial matter, EPMC asserts that this Court does not have jurisdiction to decide the Motion to Strike. It asserts that the Third Circuit affirmed the District Court determination that the Arbitrator has exclusive jurisdiction to decide whether the individual pilots have any claim. This includes, EPMC asserts, whether those claims are time-barred under applicable labor law.

In response, the LPP Claimants assert that since the Third Circuit held that any claim which the pilots may have under the seniority integration provision was a claim cognizable, and dischargeable, in this bankruptcy case, the Bankruptcy Court has jurisdiction to determine and allow those claims. They also point to the expansive retention of jurisdiction provisions of the Confirmed Plan and Confirmation Order to support their position. (*See* Appendix to Debtor's Memorandum of Law, Tab 1 at Section 15.1, and Tab 3 at ¶ 53.) [7]

■ The latter argument is without merit. If a court does not have jurisdiction over a dispute, it cannot create that jurisdiction by simply stating it has jurisdiction in a confirmation or other order. *See, e.g., United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 216 B.R. 764, 768 (W.D.Pa.1997) ("a retention of jurisdiction provision within a confirmed plan does not grant a bankruptcy court jurisdiction"); *Walnut Associates v. Saidel, et al.*, 164 B.R. 487, 495 (E.D.Pa.1994) ("the bankruptcy court cannot obtain the power to reserve jurisdiction beyond that which is necessary to effectuate the plan of reorganization merely by inserting a provision in the plan or order of confirmation reserving jurisdiction"); *In re BankEast Corp.*, 132 B.R. 665, 667 (Bankr.D.N.H.1991) ("while the court may properly retain jurisdiction over postconfirmation matters ... it may not expand its jurisdiction merely by asserting it in a reorganization plan").

■ Similarly, where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization. *See, e.g., In re Almarc Corp.*, 94 B.R. 361, 365 (Bankr. E.D.Pa.1988) and cases cited therein. Thus, the fact that Continental's Plan and the Confirmation Order provided for a

objecting to any claims. (Appendix to Debtor's Memorandum of Law, Tab 1 at § 11.1.) Even in the absence of an express provision in the Confirmed Plan, EPMC asserts that one creditor does not generally have a right to object to the claim of another creditor, unless the trustee or debtor refuses to act. *See, e.g., In re Thompson*, 965 F.2d 1136, 1147 (1st Cir.1992); *In re Morrison*, 69 B.R. 586, 589 (Bankr.E.D.Pa.1987); *In re Charter Co.*, 68 B.R. 225, 227 (Bkrtcy.M.D.Fla.1986). EPMC's standing objection is mooted, however, by the joinder of Continental in the Motion to Strike.

7. Section 15.1 of the Plan provides:
 15.1 Retention of Jurisdiction. From and after the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 Case for the following purposes:
 (a) to determine any and all objections to the allowance of Claims;
 ...
 (e) to determine all controversies, suits and disputes that may arise in connection with the interpretation enforcement or

consummation of this Joint Plan or in connection with the obligations of the Debtors, NewCal, and the NewCal Subs under this Joint Plan, ... And to enter such orders as may be necessary or appropriate to implement any distributions to holders of Allowed General Unsecured Claims.
 ...
 (q) to administer and enforce the injunctions contained in Sections 12.4, 12.19, and 14.3 of this Joint Plan, and any related injunction or decree contained in the Confirmation Order.
 Paragraph 35 of the Confirmation Order provides:
 Notwithstanding confirmation of the Plan, this Court retains exclusive jurisdiction over the Debtors' Chapter 11 cases pursuant to and for the purposes of (a) section 105(a) and 1127 of the Bankruptcy code, (b) Section 15.1 of the Plan, and for such other purposes as may be necessary or useful to aid in the confirmation and consummation of the Plan and its implementation.

broad retention of jurisdiction does not decide the issue. We must determine independently whether we retain jurisdiction over the issues presented.

■ Post-confirmation, a bankruptcy court has limited jurisdiction. Under the express language of section 1142, the court may "direct the debtor and any other necessary party to execute or deliver ... any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b). However, courts routinely find that the bankruptcy courts have no jurisdiction over the affairs of the post-confirmation debtor and its creditors, particularly with respect to claims arising post-confirmation. *See, e.g., In re Fairfield Communities, Inc.,* 142 F.3d 1093, 1095–96 (8th Cir.1998) (bankruptcy court lacks jurisdiction over post-confirmation claims); *In re Greenley Energy Holdings of Pennsylvania, Inc.,* 110 B.R. 173, 184 (Bankr.E.D.Pa.1990) (bankruptcy court has post-confirmation jurisdiction only over those matters whose resolution is necessary for consummation of the plan); *In re Iberis International, Inc.,* 72 B.R. 624, 626 (Bankr.W.D.Wis.1986) (assumption of executory contract does not confer jurisdiction on the bankruptcy court over post-confirmation breaches of that contract).

EPMC asserts that this Court lacks jurisdiction to hear the Motion to Strike the Other Eastern Pilots' claims because, it asserts, those claims are based on post-confirmation breaches of the collective bargaining agreement, which the Third Circuit held was never rejected (and therefore passed through the bankruptcy case unaffected). The LPP Claimants and the Debtor counter that the claims are based on pre-petition breach of the agreement and, therefore, the Court has jurisdiction to hear the Motion.

With respect to the Bankruptcy Court's jurisdiction to address the issue at hand, the Third Circuit's opinion provides guidance. The Third Circuit expressly rejected the Claimants' assertion that the Bankruptcy Court lacked *any* jurisdiction over their claims. 125 F.3d at 130–31. With respect to the *treatment* of those claims under the Plan of Reorganization, for example, the Third Circuit concluded that the issue was a core matter, within the Bankruptcy Court's jurisdiction. *Id. See also* 28 U.S.C. § 157(b)(1). The Third Circuit held specifically that:

> There can be no dispute that the issue as to whether the bankruptcy claim could be satisfied by a monetary award is a "core bankruptcy matter." ... Further, the issue decided by the bankruptcy court was how the claim would be treated in bankruptcy. Thus, the bankruptcy court was well within its authority to exercise jurisdiction over the issue of the status of the bankruptcy claim. Our conclusion is consistent with principles that govern the disposition of issues when bankruptcy law and labor law intersect. Accordingly, we conclude that the bankruptcy court had jurisdiction to determine whether the Claimants' claims could be satisfied by a monetary award in lieu of specific performance.

125 F.3d at 131 (citations omitted).

However, that conclusion must be reconciled with the Third Circuit's holding, in that same opinion, that the arbitration provision of the collective bargaining agreement was binding on Continental and that the Bankruptcy Court did not have the power to enjoin arbitration of the Eastern pilots' claims thereunder.[8] *Id.* at 136–38.

■ Upon reviewing the basis of the Motion to Strike, we conclude that the issue raised by the LPP Claimants (and Continental) is one which the Arbitrator must decide. The Motion to Strike is not

---

**8.** The Third Circuit concluded that the arbitration provision of the collective bargaining agreement was still applicable because that agreement had never been rejected under the applicable provisions of the Code. 125 F.3d at 137; *see* 11 U.S.C. § 1113.

premised on any provision of the Bankruptcy Code or Rules. For example, the Motion to Strike is not based on a failure of the Other Eastern Pilots to timely file a proof of claim in accordance with the Federal Rules of Bankruptcy Procedure. *See, e.g.,* F.R.B.P. 3001–3005. *But see Pioneer Investment Services Co. v. Brunswick Assocs., L.P.,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (proof of claim filed beyond bar date may be allowed if excusable neglect found).

Nor is the Motion to Strike based on disallowance or reduction of the claims under any provision of the Bankruptcy Code. *See, e.g.,* 11 U.S.C. § 502(b); *In re Main, Inc.,* 207 B.R. 832, 837 (Bankr. E.D.Pa.), *aff'd in relevant part,* No. 97–3739, 1997 WL 560119 (E.D.Pa. Aug. 26, 1997) (claim of landlord for unpaid rent must be reduced in accordance with section 502(b)(6) even though state court had already determined amount in final judgment). In those circumstances, the Bankruptcy Court clearly has jurisdiction to allow or disallow a claim.

In contrast, the Motion to Strike the Other Eastern Pilots' claims is premised on a principle of labor law: that an action to compel arbitration of labor issues must be filed within six months of the refusal to arbitrate. While normally the Bankruptcy Court can, and will, apply non-bankruptcy federal and state law to the merits of a claim during the claim objection process, in the case of claims subject to arbitration provisions (in law or contract) the Third Circuit has generally favored deferring to arbitration. *See, e.g., Hays & Co. v. Merrill Lynch,* 885 F.2d 1149 (3d Cir.1989). In this case, the Third Circuit has mandated that the merits of these claims be decided by the Arbitrator. 125 F.3d at 130. The Third circuit has, for example, held that the individual pilots' standing to prosecute claims for seniority integration is an

issue subject to the exclusive jurisdiction of the arbitrator. *Id.*

We conclude that the issue of whether the claims of the Other Eastern Pilots were timely and properly asserted in the arbitration process is similarly within the exclusive jurisdiction of the Arbitrator. The Motion to Strike those claims on that basis is consequently denied.

C. *Motion to Enforce Confirmation Order*

By its Motion to Enforce Confirmation Order, Continental seeks a determination that the Confirmation Order bars an action instituted by EPMC in the United States District Court for the District of New Jersey ("the New Jersey Action")[9] seeking a declaratory judgment that Continental is obligated to comply, post-confirmation, with the terms of the collective bargaining agreement, including the integration of the seniority lists.

1. *Jurisdiction*

EPMC asserts as an initial matter, that this Court lacks jurisdiction to decide the Motion to enjoin the New Jersey action. EPMC asserts that the Third Circuit decision, which affirmed the District Court's holding that the Bankruptcy Court could not enjoin arbitration, precludes this Court from enjoining the New Jersey Action.

The Third Circuit decision did not so state. That Court held that the Bankruptcy Court could not enjoin the arbitration proceeding; it did not hold that the Bankruptcy Court could not enjoin other actions.

However, as noted above, we must determine independently whether we have jurisdiction to decide the Motion. It is axiomatic that a court possesses the inherent authority to enforce its own orders. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 379–80, 114

---

**9.** The New Jersey Action is captioned *Doyle Addington et al. v. Continental Airlines, Inc.,*

No. 98–4858(MTB).

S.Ct. 1673, 128 L.Ed.2d 391 (1994)·(court has ancillary power to vindicate its authority and effectuate its decrees); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose ... submission to their lawful mandates").

 In the bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court retains jurisdiction, *inter alia,* to enforce its confirmation order. *See, e.g., North American Car Corp. v. Peerless Weighing & Vending Machine Corp.,* 143 F.2d 938, 940 (2d Cir. 1944) ("We have, therefore, pointed out the existence of such complementary and auxiliary jurisdiction of the court to protect its original confirmation decree, prevent interferences with the execution of the plan, and otherwise aid in its operation"); *Gryphon at The Stone Mansion,* 216 B.R. at 768 ("courts will exercise jurisdiction over post-confirmation disputes if the matter sufficiently affects creditors' recoveries under a plan of reorganization"); *Walnut Associates,* 164 B.R. at 492 (bankruptcy court retains jurisdiction over post-confirmation administration of the estate until the final decree is entered); *Almarc,* 94 B.R. at 364 (bankruptcy court retains jurisdiction "to protect its [confirmation] decree, to prevent interference with the execution of the plan, and to aid otherwise in its operation"). Furthermore, Rule 3020(d) of the Federal Rules of Bankruptcy Procedure states "Notwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate."

EPMC asserts, as significant, the fact that the Plan has been substantially consummated.[10] However, we do not view that as a fatal flaw. In the case of *Donaldson v. Bernstein,* 104 F.3d 547, 551 (3d Cir.1997), the Third Circuit held that the

bankruptcy court retained jurisdiction to hear an adversary case after the chapter 11 plan had been confirmed and substantially consummated. In fact, in *Donaldson,* the chapter 11 case had been closed and later reopened, before the adversary proceeding was even filed. *Id.* at 551–52. The Third Circuit held that even the closing and reopening of the case did not divest the bankruptcy court of jurisdiction to hear the adversary proceeding, which was premised on the alleged fraud of the principals of the debtor in causing the debtor to default on the confirmed plan. *Id.* at 551–53.

Consequently, we do not find significant the fact that the Plan may have been substantially consummated in this case. That fact does not divest us of our inherent jurisdiction to enforce the Confirmation Order issued by this Court.

### 2. *Procedural Flaw*

EPMC also asserts, as a preliminary matter, that Continental's Motion must be denied because it seeks an injunction without filing an adversary proceeding. It points to Rule 7001 of the Federal Rules of Bankruptcy Procedure which requires the commencement of an adversary proceeding (as opposed to proceeding by motion pursuant to Rule 9014) if injunctive relief is sought.

 This is correct as a general proposition. *See, e.g., In re Adams,* 106 B.R. 811, 833 (Bankr.D.N.J.1989) (request for injunctive relief by motion is procedurally defective; such relief requires the commencement of an adversary proceeding by filing a complaint); *Matter of Endicott,* 79 B.R. 439, 440 n. 1 (Bankr.W.D.Mo.1987) (a proceeding "to obtain an injunction or other equitable relief" must be commenced as an adversary proceeding); *In re Entz,* 44 B.R. 483, 485 (Bankr.D.Ariz.1984) (court cannot grant injunctive relief on motion of

---

**10.** Continental had argued, in a motion to dismiss the appeal as moot, that the Plan had already been substantially consummated.

125 F.3d at 127. The District Court held that substantial consummation of the Plan had occurred. *Id.*

a party; an adversary complaint is required).

 However, it is inapplicable to the case at bar. In this case, Continental is not seeking an injunction, it is merely seeking to enforce an injunction already in place—that created by sections 1141 and 524 of the Bankruptcy Code and the express terms of the Confirmation Order.[11] Rule 7001(7) requires the commencement of an adversary proceeding "to *obtain* an injunction or other equitable relief." Thus, we conclude that, on the basis of the plain language of Rule 7001(7), an adversary proceeding is not necessary where the relief sought is the enforcement of an injunction *previously obtained,* as in the case of enforcement of the discharge injunction.

The case cited by EPMC, *In re Sykes,* 53 B.R. 107 (Bankr.W.D.Va.1985) is inapplicable. In *Sykes,* the Court denied a motion to reinstate the automatic stay of section 362 (after the plan had been confirmed) to prevent the sale of certain real property owned by the debtor. Apparently, in that case, neither the plan nor the confirmation order contained any provision enjoining the sale. In contrast, in this case the Confirmation Order (and the Plan) contain express language enjoining lawsuits such as the New Jersey Action.[12] (See Appendix to Debtor's Memorandum of Law, Tab 1 at § 12.19, Tab 3 at pp. 41–43.) Thus, *Sykes* is distinguishable.

Consequently, we conclude that the issue is properly before us on the Motion of Continental to enforce the Confirmation Order.

3. *Merits*

 Turning to the merits of the Motion, we are convinced that the relief requested in the Motion is compelled by the Third Circuit's decision. Continental asserts that EPMC is violating the Confirmation Order by filing and prosecuting the New Jersey Action. EPMC responds that its action does not violate the Confirmation Order because its action is premised on its post-confirmation rights under the collective bargaining agreement, not on its pre-confirmation claims under that agreement. (See Motion to Strike and/or Opposition to Reorganized Debtors' Motion for Order Compelling Compliance with Order Confirming Plan of Reorganization and for Sanctions at ¶ 4.)

However, the Third Circuit squarely decided this issue when it concluded that "Simply put, we hold that *any claim* based on an award of seniority integration arising out of the resolution of the LPP dispute will be treated as a claim in bankruptcy giving rise to a right of payment. As such, the right to seniority integration is satisfiable by the payment of money damages." 125 F.3d at 136 (emphasis added). Consequently, the Third Circuit concluded that those claims were discharged by the Plan. *Id.*

Even if the language of the Third Circuit were not so explicit, we believe that its decision could not be read as EPMC wishes: that the Court decided only that the pre-confirmation claim for seniority in-

---

**11.** Section 1141 of the Bankruptcy Code provides generally that a confirmed plan of reorganization binds the debtor and all creditors affected by its terms. 11 U.S.C. § 1141. More specifically, section 1141 provides that confirmation of a plan of reorganization discharges the debtor from any pre-confirmation debt (the exceptions to this general rule are not implicated by the facts of this case). *Id.* The effect of discharge is to enjoin permanently a creditor from collecting the discharged debt. 11 U.S.C. 524(a). *See also In re Gehri,* No. CC–95–1841–MEVRU, 1996 WL 862565, at *2 (9th Cir. BAP Sept. 30, 1996)

("upon confirmation [of a chapter 11 plan] the automatic stay [of section 362] is replaced by the permanent injunction of [section 524]"); *In re Polysat, Inc.,* 152 B.R. 886, 893–94 (Bankr.E.D.Pa.1993)(effect of discharge under section 1141 is an injunction against collection of the debt as a personal liability of the debtor).

**12.** The Third Circuit vacated the injunction language only to the extent that it barred arbitration. 125 F.3d at 137–38.

tegration could be discharged in the Plan and Confirmation Order, leaving the post-confirmation claims for enforcement under the terms of the collective bargaining agreement. If that were so, the Eastern pilots would not have been contesting confirmation of the Plan as vigorously as they did. They would have let the Plan be confirmed and, the day after confirmation of the Plan, would have demanded seniority integration.

In fact, most of the arguments that EPMC now makes are identical to those that it made at the Confirmation hearing, at the District Court level and before the Third Circuit on appeal. EPMC specifically articulated the question before the Third Circuit as: "the issue thus is whether the [labor protective provision] rights, which provide for seniority integration only and do not expressly or by implication mention money damages as an alternative to seniority integration, nevertheless ... can be reduced to claims for *front pay....*" (Appendix of Submitted Documents, Tab 9 at 39 (emphasis added). See also Appendix of Submitted Documents, Tab 6 at 17–21.) The inclusion of the argument as to front pay clearly implicated post-confirmation claims. That argument was made by EPMC in the Third Circuit three years *after* confirmation of the Plan. Thus, EPMC clearly understood that post-confirmation claims were being affected by the Confirmation Order which it sought to reverse on appeal.

Further, it is clear that EPMC's arguments were expressly rejected by the Third Circuit. Now that the Third Circuit has decided that issue against EPMC, it seeks to limit that decision to the issue of pre-confirmation claims. In fact, the Third Circuit's decision was as broad as the Eastern pilots feared (and Continental now urges). As framed by the Third Circuit: "[T]he issue we must decide is

whether monetary payment is an alternative for the equitable remedy of seniority integration." *Id.* at 133. The Court concluded yes. *Id.*

In its analysis, the Court made it clear that the monetary award was in substitution *for* prospective seniority integration (that is, post-confirmation) as well as for the failure to integrate the pilot lists in the past (*i.e.*, pre-confirmation). The Court, in reviewing analogous case law, stated that:

> We find support for the proposition that monetary awards are a viable *alternative* to the equitable remedy of seniority integration in wrongful discharge cases where we have enforced awards of monetary damages in lieu of reinstatement. Much like reinstatement, seniority integration is a "make whole" remedy, the purpose of which is to restore the employee to the economic status quo that would exist but for the employer's conduct. Although we have recognized that reinstatement is the preferred remedy to address cases of wrongful discharge, we have enforced *monetary awards as a viable alternative where reinstatement is impractical.*

*Id.* at 135 (emphasis added) (citing *Maxfield v. Sinclair International*, 766 F.2d 788 (3d Cir.1985) (front pay is appropriate alternative to reinstatement where animosity makes reinstatement impractical)).[13] *See also, Van Waters & Rogers, Inc. v. Int'l Brotherhood of Teamsters*, 913 F.2d 736 (9th Cir.1990) (upholding arbitrator's award of money damages in lieu of seniority integration).

In applying those principles to the instant case, the Third Circuit stated:

> Moreover, we are convinced that the particular circumstances of this case might make the enforcement of the equitable remedy of seniority integration impractical such that an alternative money damage award would be appropriate.

---

**13.** The Court distinguished *Squires v. Bonser,* 54 F.3d 168 (3d Cir.1995), where reinstatement was ordered despite animosity of the parties because of First Amendment implica-

tions. 125 F.3d at 135 n. 11. The Court found no similar constitutional concerns in this case. *Id.*

The seniority integration sought by the [Claimants] could potentially result in the displacement of many Continental pilots. Such displacement has the potential to create an environment rife with hostility and low employee morale, not to mention a detrimental effect on employer-employee relations. The circumstances indicate that seniority integration would not be a feasible remedy and that an alternative remedy of monetary damages would be appropriate. *Therefore, we conclude that the right to seniority integration gives rise to a "right of payment" such that the remedy constitutes a "claim" dischargeable in bankruptcy.*

*Id.* at 136 (footnote omitted) (emphasis added).

Clearly, the Third Circuit's decision did not contemplate that the Eastern pilots would retain their right to seniority integration *after* confirmation of the Continental Plan. Rather, the Court concluded that any right to seniority integration (without distinguishing between pre or post-confirmation) gave rise to a claim for money damages which was discharged by the Confirmation Order.

The Third Circuit explained the effect of its ruling:

We take care to note the boundaries of our holding. It is not our purpose to suggest the award the arbitrator should grant, if an award is warranted upon disposition of the LPP dispute. Our holding is limited to how the claims should be treated in bankruptcy. Simply put, we hold that *any claim* based on *an award of seniority integration arising out of the resolution of the LPP dispute will be treated as a claim in bankruptcy giving rise to a right of payment. As such, the right to seniori-*

*ty integration is satisfiable by the payment of money damages.*

*Id.* (emphasis added).

Thus, although the Third Circuit upheld the District Court's dissolution of the injunction against arbitration and found that Continental had a duty to arbitrate the Eastern pilots' dispute, it concluded that *any* claim which the Arbitrator might award was convertible to money damages and dischargeable under Continental's Plan. *Id.* at 136–38. The Court expressly rejected EPMC's current assertion that conversion of the right to seniority integration into a right to monetary damages alone was barred by section 1113. *Id.* at 137 n. 15.

In fact, the Eastern pilots recognized that the impact of the confirmation decision (and the Third Circuit's affirmance) was much more expansive than EPMC now argues. In their Petition for Writ of Certiorari, the LPP Claimants asserted that:

The Third Circuit's ruling authorizes Continental to ignore the "substantive provisions of the agreement" by removing "the heart of the ... [labor protective provisions]" which "control seniority" from the collective bargaining agreement....

Transforming the jobs protected as a result of the merger through operation of the terms of the collective bargaining agreement into a money damages claim in the bankruptcy effectively destroys the collective bargaining agreement itself as no employees covered by the agreement will have the right to a job.

(Appendix of Submitted Documents, Tab 2 at 17–18.[14])

The Petition for Writ of Certiorari filed by EPMC is similar:

By converting the purely equitable remedy of seniority integration into a meaningless "claim" for money damages, the

14. Although designated as Tab 1 in the Appendix of Submitted Documents, the Petition for Writ of Certiorari filed by the LPP Claim- ants is actually found at Tab 2 in the Appendix.

Court of Appeals has impermissibly intruded into the collectively bargained arbitration process and decreed that any award of an arbitrator granting any type of relief, including seniority integration, is subject to review on the merits by the bankruptcy court. And further, that *any such arbitration award will be totally changed into a money award in an estate without assets.* Labor arbitration was never meant to provide an "empty bucket."

(Appendix of Submitted Documents, Tab 1 at 21 (emphasis added)).[15]

The Supreme Court denied certiorari and the decision of the Third Circuit is law of the case and may not now be reargued.[16] It appears that the New Jersey Action is nothing less than a collateral attack on the Third Circuit decision. EPMC asserts that the New Jersey Action "seeks only a declaration that the arbitrator has authority to determine the appropriate remedy for breach of the collective bargaining agreement postconfirmation." (Supplemental Memorandum of Eastern Pilots Merger Committee at 11.) This is disingenuous, that suit seeks a declaration that the Arbitrator can enter an order for specific performance and that such an order is enforceable notwithstanding the terms of the Confirmation Order. The Third Circuit specifically dealt with both these issues. It held that the arbitration can proceed, but that any order entered by the Arbitrator on the Eastern pilots' claims would be converted to a money judgment and discharged by the terms of the Plan of Reorganization and Confirmation Order. It is the latter decision which the New Jersey Action appears to seek to relitigate and change. This the Eastern pilots may not do.

### 4. *Sanctions*

Continental seeks an award of sanctions against EPMC for violation of the Confirmation Order and the discharge injunction contained in sections 1141 and 524 of the Code. We conclude that such an award is merited.

 To obtain sanctions for civil contempt, three elements must be established: (1) a valid order of the court must exist; (2) the person to be charged with contempt must have actual knowledge of the order; and (3) the person must have disobeyed the order. *In re Baker*, 195 B.R. 309, 317 (Bankr.D.N.J.1996) (quoting *Roe, et al. v. Operation Rescue*, 54 F.3d 133, 137 (3d Cir.1995)).

 As one court has explained:

The confirmation order and discharge injunction are critical elements of the fresh start that is afforded to debtors in the Bankruptcy Code. It is essential that creditors respect these court orders and permit debtors to benefit from the rights and protections to which they are entitled. Unlike section 362(h), which provides a specific statutory basis for an award of actual damages and attorneys' fees when a creditor violates the automatic stay, there is no remedial provision within the discharge provisions of sections 524 or 1141. Nevertheless, the court may take remedial measures to enforce these provisions and vindicate the rights of a discharged debtor in the event a creditor ignores these essential protections afforded to debtors. *See Matter of Miller*, 81 B.R. 669, 672 (Bankr.M.D.Fla.1988).

Bankruptcy courts have frequently sanctioned creditors for willfully violating the discharge injunction. In some cases, the court has simply found that the debtor is entitled to compensation.

---

**15.** Although designated as Tab 2 in the Appendix of Submitted Documents, the petition for Writ of Certiorari filed by the Former Eastern Pilots Granted the Right to Substitute Counsel is actually found at Tab 1 in the Appendix. EPMC is the successor to the For-

mer Eastern Pilots Granted the Right to Substitute Counsel.

**16.** *See* Part III.A at p. 5, *supra,* for a discussion of the law of the case doctrine.

*In re Braun,* 141 B.R. 133 (Bankr. N.D.Ohio 1992) (awarding attorneys' fees, compensatory damages and punitive damages for willful violation of § 524). More frequently, courts have found the offending party in contempt. There are two separate grounds for such findings of contempt. Since § 524(a) is an injunction, some courts have applied the longstanding bankruptcy rule that willful violations of injunctions, such as the automatic stay, give rise to contempt and sanctions. *See Behrens v. Woodhaven Ass'n,* 87 B.R. 971, 976 (Bankr. N.D.Ill.1988) (awarding actual damages and attorneys' fees). The more common approach, however, has been to find the party in contempt based on the bankruptcy court's authority under 11 U.S.C. § 105. *In re Barbour,* 77 B.R. 530 (Bankr.E.D.N.C.1987) (contempt power authorizes awarding damages and attorneys' fees for willful violation of § 524); *In re Miller,* 81 B.R. 669 (Bankr. M.D.Fla.1988) (attorney who willfully violated permanent injunction found in contempt and held liable for damages incurred by debtor); *Kimco Leasing, Inc. v. Knee,* 144 B.R. 1001 (N.D.Ind. 1992).

In order to be found in civil contempt, the offending party must have knowingly and willfully violated a definite and specific court order. *In re Ryan,* 100 B.R. 411, 417 (Bankr.N.D.Ill.1989).

*In re Thomas,* 184 B.R. 237, 240–41 (Bankr.M.D.N.C.1995) (footnotes omitted). *Accord, In re Aspen Limousine Service, Inc.,* 198 B.R. 341, 349–51 (D.Col.1996); *In re Kennedy,* 80 B.R. 673 (Bankr.D.Del. 1987) (courts have inherent contempt powers to enforce compliance with their lawful orders). *See* F.R.B.P. 9020.

█ In this case, there is a valid, final order: the Confirmation Order, which was affirmed by the Third Circuit. That Order barred any action to enforce any claim discharged by the Confirmation Order. (*See* Appendix to Debtor's Memorandum of Law, Tab 3 at ¶ 12, p. 42.) Section 524 also provides "an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any [discharged] debt as a personal liability of the debtor. . . ." 11 U.S.C. § 524(a)(2). The Third Circuit held that any claim for seniority integration under the collective bargaining agreement was discharged by the Confirmation Order. 125 F.3d at 136. Thus, the first element necessary for an imposition of sanctions is found.

Second, EPMC had actual knowledge of that Order, and its effect. EPMC was a party to the appeal and vigorously, but unsuccessfully, sought to overturn the Confirmation Order. The second element is met.

Third, EPMC has violated the Order by commencing the New Jersey Action which seeks to enforce a claim discharged by the Confirmation Order. In direct contravention of the Confirmation Order and Section 524, EPMC commenced the New Jersey Action to enforce the seniority integration provisions which the Third Circuit expressly held were discharged by the Confirmation Order. In doing so, EPMC has acted with utter contempt toward the orders of this Court, the District Court and the Third Circuit. The third element necessary for a finding of contempt and award of sanctions is met.

Consequently, we conclude that EPMC is in contempt of the Confirmation Order, as affirmed by the Third Circuit. As a sanction, we will direct EPMC to pay the attorneys' fees and costs incurred by Continental in defending the New Jersey Action and in prosecuting the Motion to enforce the Confirmation Order. Counsel for Continental shall file a statement detailing such fees and costs within thirty days of our decision; EPMC may comment on the reasonableness within twenty days thereafter. We will then make an appropriate award.

## IV. CONCLUSION

We conclude that, while this Court has exclusive jurisdiction to allow the claims of the Other Eastern Pilots against Continental, the Third Circuit has mandated that the issues surrounding those claims (who had standing to press the claims, the validity of the claims, and whether they are time-barred) must first be resolved by the Arbitrator. We, therefore, deny the Motion to Strike the claims of the Other Eastern Pilots.

Further, since we find that the decision of the Third Circuit affirmed the ruling that all claims of the Eastern Pilots are discharged by the Confirmation Order, we conclude that the Confirmation Order does bar the New Jersey Action instituted by EPMC. Continental is entitled to sanctions against EPMC for its knowing and willful violation of the Confirmation Order.